**PEERLESS PRESSED METAL CORPO-
RATION, Plaintiff, Appellant,**

v.

**INTERNATIONAL UNION OF ELEC-
TRICAL, RADIO AND MACHINE
WORKERS, AFL–CIO, et al., Defend-
ants, Appellees.**

No. 71–1198.

United States Court of Appeals,
First Circuit.

Nov. 8, 1971.

Julius Kirle, Boston, Mass., for appel-
lant.

Michael A. Feinberg, Boston, Mass.,
for appellees.

Before ALDRICH, Chief Judge, Mc-
ENTEE and COFFIN, Circuit Judges.

PER CURIAM.

This is an action for a declaratory judgment seeking to enjoin arbitration of a labor grievance. The district court denied relief, but by agreement of the parties arbitration was postponed until the actions should be disposed of. Appellant employer and appellee union[1] for many years have had a collective bargaining agreement calling for arbitration of "any controversy between the parties or between the Company and employees covered by this Agreement as to any matter involving the interpretation or application of any of the provisions of this Agreement" which has not been resolved through the grievance machinery. In 1965 one Burke, an employee of thirteen years seniority, was promoted to supervisor. Five years later he was laid off, and sought reinstatement into the bargaining unit as a rank and file employee. The employer refused and the union, after unsuccessfully invoking the grievance procedure, sought arbitration. The company brought this action to enjoin arbitration, claiming that the dispute is not arbitrable because Burke, as a laid-off supervisor, is not a person for whom the union is entitled to grieve.

■■■ It is common ground that although a collective bargaining agreement is a contract, it is to be more liberally construed than an agreement between private individuals. A court should not refuse to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrier & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). This does not grant to the courts a license to inquire into the merits on the theory that they are enforcing a clause limiting arbitration to disputes requiring an interpretation of the agreement. A dispute may not be kept from the arbitrator on this ground so long as it is "possible", even if as a court we might not think it "reasonable", for an arbitrator to decide in favor of the party demanding arbitration without thereby, in effect, amending the plain language of the agreement. See John Wiley & Sons v. Livingston, 376 U.S. 543, 555, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Camden Industries Co. v. Carpenters Local Union No. 1688, 353 F.2d 178, 180 (1st Cir. 1965).

■■■ The company relies on Article II —Coverage, which provides that "This Agreement applies only to all * * * employees * * * but excluding * * * supervisors as defined in the Act." If Article II were susceptible only of a very precise and narrow definition of "employee", the mere fact that other clauses could be read consistently with a broader definition would not suffice for arbitrability. We read certain clauses of the agreement, however, as arguably pointing positively to a different and wider definition. Under these circumstances, we deem it proper for an arbitrator to resolve the dispute. In particular, the notion that seniority is inextricably intertwined with the right to reinstatement provides, in our view, a basis for an interpretation favorable to Burke of the word "employee" in the coverage clause. The argument would be that under the agreement supervisors retain seniority accrued before their promotions and that, therefore, they remain employees for the purpose of exercising seniority rights and their right of reinstatement, like that of other employees, is determined solely by their seniority. On this theory, arbitration of the grievance is not plainly barred by the Article II inclusion of "employees" and exclusion of "supervisors".

Support for the proposition that supervisors retain accrued seniority rights could be drawn from two provisions of the agreement. In setting forth the conditions under which employees lose seniority rights, Article XVIII does not indicate that they are lost upon promotion to supervisory status. Addition-

1. Local 209, International Union of Electrical, Radio and Machine Workers, AFL–CIO.

ally, Article XXII(f) explicitly provides that an employee promoted to be the "seventh foreman" (not Burke) retains his seniority rights as of the date of his promotion. While one might argue that this states an exception to the general rule rather than an illustration of it, the former interpretation is by no means compelled by the language. The company concedes that arbitrators ordinarily grant accrued seniority rights to foremen who are promoted from the bargaining unit and then returned to it.

While the construction of the agreement which would confer employee status for the purposes of Article II on one who seeks to exercise seniority rights is weak, we cannot conclude that it is impossible. We note that, under settled law, a laid-off employee is still an employee.[2] Burke is arguably in a status akin to, if somewhat different from, that of a laid-off employee. He is willing to work though not now working and arguably possesses certain rights which have accrued to him, *qua* employee, under the collective bargaining agreement. This position has been taken in several arbitrators' decisions which, while they deal with different collective bargaining agreements and do not in any event bind us, suggest that the mode of analysis is not inconceivable to those involved in labor-management relations.[3]

To say that Burke may be an employee for the purpose of reinstatement is not to conclude that he is entitled to reinstatement. To determine the merits of Burke's claim, the arbitrator may look to the "law of the shop" and to the negotiations which led to the present agreement as well as to the other provisions of the agreement. These might include the management rights clause (Article XIV), the union membership clause which requires that all employees "including former supervisory personnel who have been demoted by the Company into the bargaining unit" must join the union (Article IV(c)), and the provision that the seventh foreman will, under certain circumstances, "revert to his previous status".

The language of these provisions would seem to permit the "possible" inference that demotion or reversion is automatic when a former production worker is laid off or discharged as a supervisor. On the other hand, the arbitrator could surely conclude that management has complete discretion over Burke's rehiring. What is crucial here is simply that the agreement could be read as entitling him to reinstatement. So reading the agreement, under the rigorous standard of judicial restraint applicable to this field, we affirm the district court's order to arbitrate.

---

2. See American Cyanamid Co., 19 N.L.R.B. 1026, 1033 (1940); Unit Cost Corporation, 7 N.L.R.B. 129, 133 (1938).

3. Reynolds Metals Co., 55 Lab. Arb. 1011 (1970); Babcock and Wilcox Co., 48 Lab. Arb. 1234 (1967); F. H. Noble & Co., 28 Lab. Arb. 641 (1957).