UNITED STEELWORKERS OF AMERICA, LOCAL NO. 1617, Plaintiff-Appellee,

v.

The GENERAL FIREPROOFING COMPANY, Defendant-Appellant.

No. 72–1139.

United States Court of Appeals, Sixth Circuit.

July 12, 1972.

Eldon S. Wright, Youngstown, Ohio, Harrington, Huxley & Smith, Youngstown, Ohio, on brief, for defendant-appellant.

Eugene Green, Youngstown, Ohio, Anthony P. Sgambati, II, Green, Schiavoni, Murphy & Haines, Youngstown, Ohio, on brief, for plaintiff-appellee.

Before WEICK and PECK, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WEICK, Circuit Judge.

Plaintiff labor union, United Steelworkers of America, Local No. 1617, the duly recognized bargaining agent for production and maintenance employees of defendant General Fireproofing Company, at its Youngstown, Ohio plant, brought this action in the District Court under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, for breach of the provisions of a collective bargaining agreement in effect between the parties. The union sought an order requiring the company to arbitrate the discharge of one of its supervisors, Edward Kopstoffer, or, in the alternative, that the company be ordered to restore Kopstoffer to his employment with back pay. The District Court overruled the Company's motion for summary judgment, and summarily ordered that the dispute concerning Kopstoffer's rights to continued employment be submitted to binding arbitration, as provided in the collective bargaining agreement although the union had filed no motion for summary judgment. The Company appealed.

The relevant provisions of the collective bargaining agreement are as follows:

"ARTICLE I

"THE provisions of this Agreement constitute the sole procedure for the processing and settlement of any claim by an employee or the Union of a violation by the Company of this Agreement. As the representative of the employees, the Union may process grievances through the grievance procedure including arbitration in accordance with this Agreement or adjust or settle the same. . . ."

"ARTICLE II–DEFINITION

"AS used herein the term 'employee' includes all production and maintenance employees of the Company at its Youngstown, Ohio, plant and excludes supervisors, shipping department clerks, timekeepers, secretaries to the foremen and division superintendents, general office, general factory office and employment office employees, cafeteria workers, plant protection and laboratory employees."

"ARTICLE X–SENIORITY AND CONTINUOUS SERVICE

"NO employee shall lose his seniority by being or having been promoted to the supervisory force and if, after such promotion, he is returned to regular production or maintenance work, he shall have the same seniority status as if he had continued his employment in the department. In such case, he shall return to the occupation which

he held immediately prior to his promotion to supervision. . . ."

"ARTICLE XII—GRIEVANCE PROCEDURE

"SHOULD any dispute or disagreement arise between an employee and the Company as to the meaning and application of the provisions of this Agreement, as to an alleged violation of the same, or over the suspension of an employee, such dispute or disagreement, unless otherwise provided herein, shall be handled in the following manner:

ARTICLE XII continues and describes various steps in the grievance procedure. One portion of that procedure is:

"IT is further understood that no arbitrator shall have the power to add to, subtract from, or modify the terms of this Agreement or any system or program to which reference is herein made.

. . . ."

Kopstoffer was first employed by the company in January of 1941, and in the fall of 1963 was offered a promotion to a supervisory position. Before he would accept the position, however, Kopstoffer wanted assurances that:

(1) He would nevertheless be assured of receiving his "buy-out." (A company purchase of an hourly rate guarantee, which was imminent for bargaining unit employees.)

(2) His name would be kept on the department seniority list.

(3) He would have steady "daylight" working hours.

(4) If either he or the company became unsatisfied with his work as supervisor, he would be entitled to return to his previous work in the bargaining unit.

The union contends that various company management officials agreed to these demands.

Kopstoffer began working as a supervisor in October, 1963, and continued to do so until January 12, 1971, when he was discharged from further employment with the company. This discharge date left Kopstoffer one day short of 30 years of service, which would have qualified him for the pension for employees with 30 or more years of service. The company alleges that Kopstoffer was discharged because of disloyalty to the company, whereas the appellee union contends that the discharge was due to his activity as President of the company's Foremen's Club. The alleged disloyalty occurred at the time when Kopstoffer was a supervisor.

After the discharge, the union filed a grievance under the collective bargaining agreement, but the company refused arbitration contending that Kopstoffer was not an "employee" as defined in Article II of the collective bargaining agreement, and that therefore the company had never agreed to arbitration in this kind of a dispute. It maintained that any rights that Kopstoffer might have arise under the alleged private agreement, and not through the terms of the collective bargaining agreement. After the company refused arbitration, the union filed the present suit.

■ A federal court, when considering the applicability of arbitration in a labor management dispute, faces a strong policy favoring arbitration. Thus, the court must order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Indeed, a main thrust of the decisions by the Supreme Court in the steelworker's trilogy was that any possible doubts as to arbitrability are to be resolved in favor of arbitration. See United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior and Gulf, supra; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960).

"This Court has in the past recognized the central role of arbitration in effectuating national labor policy. Thus, in Warrior & Gulf Navigation Co., supra, 363 U.S. at 578, 80 S.Ct. [1347] at 1351, arbitration was described as 'the substitute for industrial strife,' and as 'part and parcel of the collective bargaining process itself.'" John Wiley & Sons v. Livingston, 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964).

■■ Nevertheless, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration. Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, federal courts have the duty to determine if a party to a labor contract has breached its promise to arbitrate, although such a judicial inquiry is strictly confined to the question of whether or not the parties have agreed to arbitration. *Warrior & Gulf,* supra at 582, 80 S.Ct. 1347. It is not for the arbitrator to decide whether the dispute is arbitrable.

In *John Wiley & Sons, supra,* 376 U.S. at 547, 84 S.Ct. at 913, the Supreme Court made the judicial obligation quite clear when it stated:

"The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori*, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all."

See also International Union of Operating Engineers, Local 150 v. Flair Builders, 406 U.S. 487, 491, 492, 92 S.Ct. 1710, 1713, 32 L.Ed.2d 248 (May 30, 1972).

In order to determine then whether the parties have agreed to arbitrate the dismissal of Kopstoffer, we must examine the collective bargaining agreement between Local No. 1617 and the Company to see if, under any reasonable interpretation, agreement to arbitrate can be found.

Article XII, which outlines the grievance procedure and provides for arbitration, is very broad and covers "any dispute or disagreement . . . between an employee and the Company as to the meaning and application of . . . this Agreement, . . . or over the suspension of an employee. . . ." But Article II is clear in its definition as to who is an "employee" under the Agreement: "As used herein the term 'employee' includes all production and maintenance employees of the Company at its Youngstown, Ohio plant and excludes supervisors . . ." Another section of Article XII specifies that any arbitrator does not have power to add to, subtract from or modify the terms of the Agreement.

■ In our opinion, the plain meaning of these provisions is that the Company has agreed to process any and all disputes involving its "employees" through the grievance procedures (including arbitration), but that disputes concerning supervisory personnel are not included. Article X, which speaks of certain rights of supervisory personnel, is equally clear in providing that an employee who has accumulated seniority is then promoted to supervisor, and later is returned to production and maintenance work, retains his previously accumulated seniority. Nevertheless, by its terms it does not impose upon the Company any duty to arbitrate a dispute concerning discharge of a supervisor.

There is no dispute in this record over the fact that Edward Kopstoffer left production and maintenance work in 1963, and was a supervisor at the time of his discharge in January, 1971. It is our conclusion, therefore, that General Fireproofing had never agreed to arbitration of this kind of a dispute in the collective bargaining agreement.

We find two reported cases somewhat similar to this one—both decided by per curiam opinions, but they reach opposite

results. The one which we feel is better reasoned, and which we follow, is: General Telephone Co. of California v. Communications Workers of America, 402 F.2d 255 (9th Cir. 1968). In that case, until September 1, 1964 the appellant had been a wage earning employee but was then promoted to supervisor. He was discharged on February 4, 1965. The collective bargaining agreement applied only to wage earning employees. The Court reversed the District Court's order that the company must arbitrate the dispute, saying that:

> "We hold that a party cannot be compelled to arbitrate a dispute which is outside the area encompassed by the arbitration agreement. Here, the agreement to arbitrate did not include disciplinary procedures against a supervisory employee for acts after he became part of management." General Telephone, supra, at 256.

In Peerless Pressed Metal Corp. v. International Union, 451 F.2d 19 (1st Cir. 1971), the collective bargaining agreement had a comprehensive arbitration clause, but also contained a clause stating that the agreement excluded supervisors. In 1965 one Burke was promoted to supervisor, but in 1970 was laid off and subsequently sought reinstatement to the bargaining unit. The Court affirmed the District Court's order to arbitrate because certain clauses of the agreement arguably pointed to a wide definition of "employee", particularly one under which supervisors retained seniority accrued before promotion; the Court surmised therefore that those supervisors possibly remain employees for the purpose of exercising seniority rights and rights of reinstatement. Under this interpretation, the Court held that arbitration was not plainly barred.

Since we do not think that the provisions of the instant agreement permit the possible inference that either "demotion" or "reversion" may be automatic when a former production worker is discharged as a supervisor, a view taken by the Court in *Peerless, supra,* we do not follow that decision. We do not understand how an arbitrator could arbitrate a grievance of an employee who is not a member of the bargaining unit.

In addition, the union urges that the express agreement which Company officials made with Kopstoffer is part of the collective bargaining agreement, at least to the extent of being governed by the arbitration clause under the "common law of the shop". United Steelworkers v. Warrior & Gulf, *supra,* 363 U.S. at 579, 80 S.Ct. 1347. We disagree and are of the opinion that this alleged express agreement was a private one between Kopstoffer and the Company, rather than somehow a part of the collective bargaining agreement. It was made at a different time than the collective bargaining agreement; Kopstoffer "negotiated" the deal primarily by himself for his own benefit; the only connection of the union to the agreement was that Kopstoffer called Mr. Frank Trainor, a district representative of the union, and asked him for advice as to whether or not he should accept the supervisory position. Trainor then discussed Kopstoffer's "deal" with the company's assistant production manager, and was "assured" that Kopstoffer would retain seniority rights, and would be returned to the bargaining unit if the company or he became unsatisfied with his work as supervisor. Nothing, however, indicates that the agreement itself was made with the union rather than Kopstoffer much less that it was made a part of the collective bargaining agreement. Moreover, the union has cited no authority, and we have found none, which would indicate that a dispute concerning a separate oral agreement which pertains to only one employee, is arbitrable as part and parcel of a collective bargaining agreement.

Consequently, then, we hold that the terms of the alleged oral agreement are not arbitrable under the collective bargaining agreement's provisions. And, since the oral agreement is not one "between an employer and a labor organization representing employees," 29 U.S.C.A. § 185(a), a federal court has no ju-

risdiction to determine rights thereunder. Kopstoffer is relegated to whatever remedy he may have in the state courts for breach of the contract allegedly made with him.

The judgment of the District Court is reversed, and the case is remanded with direction to grant the appellant's motion for summary judgment.