# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1738

_____

International Brotherhood of    *
Electrical Workers, AFL-CIO,    *
Local 1; Robert Anderson,    *
   *
       Appellees,    *
   *    Appeal from the United States
     v.    *    District Court for the
   *    Eastern District of Missouri.
GKN Aerospace North America, Inc.,    *
St. Louis,    *
   *
       Appellant.    *

_____

Submitted: January 10, 2005
Filed: December 19, 2005

_____

Before SMITH, HEANEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

On August 28, 2002, the International Brotherhood of Electrical Workers Local No. 1 ("Union") filed suit in the United States District Court seeking an order compelling GKN Aerospace North America, Inc. ("GKN") to arbitrate a dispute involving one of GKN's supervisory employees. In an amended complaint, the Union also added Robert Anderson as a plaintiff and alleged a breach of contract arising from the dispute. After discovery, both parties moved for summary judgment. The

district court granted the Union's motion and entered an order compelling arbitration. GKN appeals, and we reverse.

## I.

Robert Anderson was hired by McDonnell Douglas as an electrician in 1978, and he continued to work in that position until March 1998. During this time, he was a member in good standing of the bargaining unit represented by the Union. In 1997, Boeing Company purchased the facility where Anderson worked, but Anderson continued in his capacity as an electrician. In March 1998, Anderson was promoted to a supervisory position, at which time he obtained a withdrawal card from the Union and ceased to be a member of the bargaining unit.

In January 2001, the facility at which Anderson worked was acquired by GKN. Before GKN assumed control, it negotiated with the Union a new collective bargaining agreement ("Agreement") that covered bargaining unit employees. GKN negotiated directly with supervisors like Anderson, and GKN hired Anderson under a contract that "forfeit[ed] any and all rights associated with" his former position with Boeing. Notwithstanding this new contract, in 2002, Anderson sought to return to the bargaining unit as an electrician. GKN denied this request, informing Anderson that it had no openings for electricians, and that if he no longer wanted to work as a supervisor, then he would have to resign. The company then terminated Anderson's employment on April 4, 2002.

On April 8, 2002, the Union filed a grievance challenging GKN's refusal to return Anderson to the bargaining unit, and on May 7, the Union notified GKN that it intended to submit the grievance to arbitration. GKN refused to arbitrate, and the Union brought a motion to compel arbitration. In an amended complaint, the Union added Count II, alleging that GKN had breached its contract with the Union by refusing to allow Anderson to return to the bargaining unit. Both parties moved for

summary judgment, and the district court granted the Union's motion with respect to Count I, compelling arbitration.

## II.

We review *de novo* the district court's decision to grant the Union's motion for summary judgment, considering whether the record, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). Where, as here, an arbitration provision of a contract is at issue, we also review *de novo* the court's interpretation of the contract and the arbitration clause. *See Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003).[1]

Arbitration is a matter of contract, and no party may be required to submit a dispute to arbitration if it has not agreed to do so. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). In the labor context, however, the Supreme Court has determined that Congress's chosen policy is best effectuated by a presumption in favor of arbitration. *Id.* at 582-83. Thus, when the dispute involves a labor issue, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

GKN argued both before the district court and this court that the presumption of arbitrability should not apply to this case. We may assume that it is applicable,

---

[1]GKN asserts that the Union lacks Article III standing to litigate this grievance because the Union itself has no injury-in-fact, and because the Union cannot claim organizational standing on behalf of a non-member. We conclude that the Union does have standing, because the Union alleges injury-in-fact deriving from its right to enforce the agreement that it negotiated. *See Anderson v. Alpha Portland Indus.*, 752 F.2d 1293, 1296 (8th Cir. 1985) (en banc); *see also Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. and Local 134 v. Yard-Man, Inc.*, 716 F.2d 1476, 1486 (6th Cir. 1983).

however, because even according the traditional presumption, we conclude that arbitration of this dispute should not be compelled under the terms of the collective bargaining agreement.

The determinative question is whether the collective bargaining agreement at issue here is "susceptible of an interpretation that covers" the grievance at issue. *Warrior & Gulf*, 363 U.S. at 582-83. In considering that issue, we must seek to apply two additional principles derived from the Supreme Court's jurisprudence in this area. Whether a collective bargaining agreement requires the parties to arbitrate a particular grievance is "undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986). At the same time, however, the Court has directed that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*

Sometimes, where the merits of the claim are intertwined with the question of arbitrability, these two principles are in tension. As GKN illustrates in its argument, if a court is entirely blind to the merits of a grievance, then the parties could be forced to arbitrate grievances that have no relationship whatsoever to the collective bargaining agreement. For example, GKN posits, if a court did not consider whether a claim at least plausibly arises under the Agreement, the Union could succeed in gaining arbitration of a grievance claiming a right to safety glasses for non-Union employees such as office clerical staff, even though the Agreement's safety glasses requirement is clearly intended to apply only to Union members. In *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991), the Supreme Court appeared to instruct that the judicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance: "Although doubts should be resolved in favor of coverage, we must determine whether the parties agreed to arbitrate this dispute, and *we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement*." 501 U.S. at 209 (emphasis added)

-4-

(internal citation and quotation omitted). As the Seventh Circuit later synthesized *Litton*: "If the court must, to decide the arbitrability issue, rule on the merits, so be it." *Indep. Lift Truck Builders Union v. Hyster Co.,* 2 F.3d 233, 236 (7th Cir. 1993).

This approach is consistent with the appellate decisions most analogous to the present case, which are cited by each party. In *Peerless Pressed Metal Corp. v. International Union of Electrical, Radio and Machine Workers,* 451 F.2d 19 (1st Cir. 1971) (per curiam), cited by the Union, the court held that a dispute between a supervisor and his employer was arbitrable so long as it is "possible" for an arbitrator to decide in favor of the supervisor "without thereby, in effect, amending the plain language of the agreement." *Peerless*, 451 F.2d at 20. After reviewing whether there was support for the supervisor's position under various provisions of the collective bargaining agreement, the First Circuit concluded that the supervisor's argument was "weak," but not "impossible," and thus upheld an order to arbitrate. *Id.* at 21. By contrast, the Sixth Circuit declined to order arbitration in a similar dispute between supervisors and an employer after concluding that the plain meaning of the collective bargaining agreement did not make arbitrable disputes concerning supervisory personnel. *United Steelworkers Local No. 1617 v. Gen. Fireproofing Co.,* 464 F.2d 726, 729-30 (6th Cir. 1972). The court in *General Fireproofing* said it could "not understand how an arbitrator could arbitrate a grievance of an employee who is not a member of the bargaining unit." *Id.* at 730. *See also Gen. Tel. Co. v. Communication Workers of Am.*, 402 F.2d 255, 256 (9th Cir. 1968) (per curiam) (holding that employer was not required to arbitrate dispute with union involving discharge of supervisor, where agreement to arbitrate "did not include disciplinary procedures against a supervisory employee," and "[t]o hold otherwise, would be to rewrite the contract between the parties.").

These decisions resolved the question of arbitrability differently, but the courts agreed that judicial review was required at least to the point of determining whether it was "possible" for an arbitrator, consistent with the plain meaning of the agreement,

to rule in favor of the party demanding arbitration. Although the dissent contends dramatically that this opinion "ignores" an admonition of the Supreme Court, and that we have "abandoned" this circuit's long-standing approach, the dissent too endorses the rationale of *Peerless*, *post* at 13-14, and, thus, the attendant inquiry into whether the agreement "could be read" to support the claim of the party seeking arbitration. 451 F.2d at 21. What separates us from the dissent, therefore, is no great matter of legal principle, but rather a difference of opinion on how to apply the governing principle to the facts of this case.

Ordinarily, evidence of agreement to arbitrate a particular type of dispute is best found in the arbitration provision itself. In the agreement between GKN and the Union, dispute resolution is addressed at Article XX, entitled "Determination of Disputes":

> It is agreed that the grievances that may arise during the life of this Agreement will be promptly discussed and the parties hereto will diligently cooperate in an effort to adjust all grievances at the earliest possible time.
>
> . . . .
>
> **Section 4**
>
> Grievance Procedure –
>
> . . . .
>
> **STEP ONE**
>
> a) If any one or more employees have a grievance, it shall be submitted by the Shop Steward on the grievance form to the supervisor concerned.
> . . . .
>
> . . . .

**STEP FOUR**

> e) If the grievance is not settled to the satisfaction of those concerned, step four, arbitration, shall be taken . . . .

(J.A. at 34-35).

The district court concluded, and we agree, that arbitration under these provisions is limited to matters that are related to the collective bargaining agreement.[2] Determining whether the arbitration clause applies to a particular dispute thus requires a determination of whether the grievance at issue arises under the agreement. Assuming that a supervisor who is not a member of the bargaining unit is an "employee" who may bring a grievance within the meaning of Article XX, we must consider whether the language of the agreement at issue is "susceptible of an interpretation" that would create a right arising under the agreement that GKN may have agreed to arbitrate.

In asserting Anderson's right to return to the bargaining unit, the Union draws on the language of Article XVIII, Section 9A of the collective bargaining agreement, which provides that "[a]n employee covered by this agreement who on or after its effective date, accepts a supervisory position over members of this Bargaining Unit shall continue to accumulate seniority for a period of one (1) year following his transfer or reassignment." (J.A. at 22). From this language, the Union infers both that Anderson had accumulated seniority rights under the Agreement, and that those seniority rights gave him a right to return to the bargaining unit.

_____

[2]At oral argument, the Union acknowledged that for a grievance to be arbitrable, "it should be related to the contract and to the bargaining relationship between the company and the Union."

We conclude, however, that a plain reading of this provision does not permit the possible inference that Anderson has a right to return to the bargaining unit. Anderson clearly is not an employee, covered by the agreement, "who on or after its effective date accepts a supervisory position." The effective date of the Agreement was January 1, 2001, but Anderson had been acting in a supervisory role since 1998, and he specifically accepted employment as a supervisor with GKN on October 31, 2000. The Union argues that the agreement is ambiguous, because "effective date" could refer to the date the agreement's language was first negotiated, as opposed to the effective date of the agreement itself. We reject this contortion of the plain language, which uses the phrase "its effective date" in clear reference to the date that the agreement was made effective and not to some unknowable date on which the language was first conceived.

The Union also points to prior iterations of the collective bargaining agreement, which apparently permitted supervisors to return to the bargaining unit at will. For example, in 1990 McDonnell Douglas denied a Union grievance against such a right, asserting that "Article XVIII, Section 9 grants former supervisors the right to return to the bargaining unit" and that McDonnell Douglas's "consistent practice has been to honor the request of former supervisors who wish to return to" the unit. (J.A. at 604). The Union claims that these interpretations should inform our understanding of the current agreement with GKN.

The difficulty with reliance on this bargaining history is that GKN was not a party to the prior agreement (indeed, GKN is two employers removed, having succeeded Boeing, which succeeded McDonnell Douglas), and the collective bargaining agreement underwent several material revisions when it was renegotiated by GKN. Most significant to the current controversy, the agreement between the Union and GKN removed a former Section 9C of Article XVIII, which had extended the seniority rights in Section 9A to employees who "on the effective date of this Agreement, hold seniority rights, but *prior thereto* have been promoted out of the

Bargaining Unit to a supervisory position." (J.A. 612) (emphasis added). While the language in former Section 9C arguably could have been read to include supervisors like Anderson, it was specifically omitted from the current bargaining agreement. Assuming, *arguendo*, that the seniority rights described in Section 9A of the current agreement do create a right to return to the bargaining unit for certain supervisors promoted *after* the effective date of the agreement, there is no language in the current version of Article XVIII, Section 9 that plausibly extends such rights to Anderson, who was already a supervisor when the agreement was reached.

In addition, application of the former interpretations would require that we ignore the "zipper clause" that was included in the current bargaining agreement. Article XXVIII, Section 1 of the Agreement attests that "[t]hese Articles of Agreement, together with the Job Specifications referred to in Article 5, Section 9, and the Letters of Understanding listed in Section 3 below, constitute the total agreement between the two parties." (J.A. at 43). Further, the Agreement states that "[a]ll other agreements and understandings . . . are rescinded." (J.A. at 43). These provisions undermine reliance on interpretations of prior agreements to override the plain meaning of Section 9A of the current agreement.

We believe, therefore, that it would not be possible for an arbitrator to decide in favor of the Union on this grievance without thereby, in effect, amending the plain language of the collective bargaining agreement. *See Peerless*, 451 F.2d at 20. We conclude that the grievance asserted on behalf of Anderson does not arise under the Agreement, and it is not subject to arbitration.

Because we find that the Union's motion to compel arbitration should not have been granted, we must reach the second count of the Union's complaint, which alleged a breach of contract in GKN's failure to return Anderson to the bargaining unit. Our conclusion that the collective bargaining agreement is not susceptible of an interpretation that would grant Anderson such a right necessarily leads us to conclude

that GKN could not have breached the Agreement by failing to acknowledge that right. We therefore find that GKN is entitled to summary judgment on Count II of the Union's complaint.

*     *     *

For the foregoing reasons, we reverse the district court's decision and remand for entry of a judgment consistent with this opinion.

HEANEY, Circuit Judge, dissenting.

I would affirm the district court and require GKN to submit to arbitration the question of whether it was required to permit Robert Anderson to return to a position as a journeyman electrician.

The majority correctly reads the Supreme Court's decisions in stating that the determinative question is whether the collective bargaining agreement is susceptible of an interpretation that covers the grievance at issue, and that this question is one for judicial determination. But the majority is incorrect in opining that this analysis allows the court to consider the potential merits of the underlying claim. This ignores the admonition of the Supreme Court that we are not to rule on the potential merits of the underlying claim in deciding arbitrarily and does precisely that. *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986).

The collective bargaining agreement between the union and GKN contains a broad arbitration clause requiring that grievances arising during the length of the agreement be adjusted at the earliest possible time, and if not adjusted, be submitted to arbitration. (J.A. at 25-27.) Here, the dispute is whether a supervisor has a right to return to the position of journeyman pursuant to the provisions of Article XVIII, Section 9A of the agreement, which reads as follows:

-10-

An employee covered by this agreement who on or after its effective date, accepts a supervisory position over members of this Bargaining Unit shall continue to accumulate seniority for a period of one (1) year following his transfer or reassignment. After one (1) year, the accumulation of seniority shall cease, but each such employee shall retain all seniority accumulated to that time as long as he remains in a supervisory position over members of this Bargaining Unit. If an employee leaves the position of supervisor over such members, all accumulated seniority shall be forfeited unless he returns to the Bargaining Unit at that time.

(J.A. at 22.)

GKN argues that this clause must be read literally so that the collective bargaining agreement between the union and GKN signed on January 2, 2002 preserved seniority rights *only* for those employees who were promoted from a journeyman electrician to a supervisor after the effective date of the agreement. Here the supervisor in question was promoted before GKN and the union negotiated the collective bargaining agreement. The company further argues that because the language is so clear, the dispute is not arbitrable. The union takes the position that the clause must be read in light of the history of collective bargaining and other relevant factors, and that thus read, it requires the company to transfer the person to a journeyman position. The union further contends that the company agreed to arbitrate disputes between the parties and should thus be held to its commitment.

The cases cited by the majority do not support its conclusion that Anderson's case is not subject to arbitration. It initially relies on *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991). In that case, the collective bargaining agreement contained a broad arbitration clause similar to the clause in the instant case. The agreement expired in October 1979. The parties had not yet negotiated a new agreement when the company laid off ten of its workers, including six of its most

-11-

senior employees, in August and September of 1980. The union filed a grievance claiming a violation of the agreement. Litton refused to negotiate the grievance or to submit the dispute to arbitration under any circumstance. The NLRB found that Litton's action violated Sections 8(a)(1) and (5) of the National Labor Relations Act. It ordered Litton to bargain over the layoffs, but refused to order that it submit the dispute to arbitration because the collective bargaining agreement *had expired* before the layoffs. The court of appeals affirmed and the Supreme Court upheld that court. The court held, therefore, only grievances involving rights that accrued or vested prior to expiration were arbitrable. *Litton Fin. Printing Div.*, 501 U.S. at 209. The Court stated:

> We acknowledge that where an effective bargaining agreement exists between the parties, and the agreement contains a broad arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*Id.* at 209 (quoting *AT&T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986), and *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

*Litton* is not this case. Here, a collective bargaining agreement with a broad grievance and arbitration clause was in *full effect* at the time the union sought to protect the right of a twenty-five year employee to return to the bargaining unit. The union had a right, pursuant to the collective bargaining agreement, to grieve and arbitrate the rights of the employee. The company had a similar obligation and should not now be permitted to avoid this responsibility. The union may win or lose at arbitration, but it deserves a chance.

-12-

The majority next cites *Peerless Pressed Metal Corp. v. International Union of Electrical, Radio & Machine Workers*, 451 F.2d 19 (1st Cir. 1971). It concedes that the result in that case is contrary to the GKN view, and I believe that the rationale of that case supports the view that arbitration is appropriate in the instant case. There, an employee who was in the bargaining unit for thirteen years was promoted to a supervisor. Five years later he was laid off (not discharged for cause). The company refused to arbitrate on the grounds that the collective bargaining agreement did not cover supervisors. There, as here, the court determined that an argument could be made that under the agreement, employees who became supervisors retained seniority accrued before their promotion. Therefore, they remained employees for the purpose of exercising their seniority rights when seeking reinstatement. Thus, arbitration was not plainly barred by the clause of the contract that provided for the inclusion of employees and the exclusion of supervisors. The court then restated the obvious: that for a court "[t]o say that [one seeking reinstatement] may be an employee for the purpose of reinstatement is not to conclude that he is entitled to reinstatement." *Peerless Pressed Metal Co.*, 451 F.2d at 21. That decision is for the arbiter to make.

The majority then cites *United Steelworkers of America v. General Fireproofing Co.*, 464 F.2d 726 (6th Cir. 1972). The facts in that case are different than those in *Peerless*. In *General Fireproofing*, an employee of twenty-two years was promoted to supervisor in 1967. In June of 1971, he was discharged because the company had found him to be disloyal. The employee and the union, however, believed that he was discharged because he was just one day short of qualifying for his pension. The union sought to rely on the collective bargaining agreement's seniority and retention provisions to protect the employee from being discharged for cause. Finding that this issue was clearly outside the purview of the collective bargaining agreement, the court stated:

Article X, which speaks of certain rights of supervisory personnel, is equally clear in providing that an employee who has accumulated

-13-

seniority is then promoted to supervisor, and later is returned to production and maintenance work, retains his previously accumulated seniority. Nevertheless, by its terms it does not impose upon the Company any duty to arbitrate a dispute concerning discharge of a supervisor.

*Gen. Fireproofing Co.*, 464 F.2d at 729.

To summarize, neither *Litton* nor *General Fireproofing* supports the majority's view that the dispute between the union and GKN is not arbitrable. *Litton* involved the right of the union to arbitrate a dispute that arose after a collective bargaining agreement terminated, and *General Fireproofing* involved the union's attempt to arbitrate the discharge for cause of an employee by way of its interpretation of a collective bargaining agreement's seniority clause. In contrast, Anderson was seeking to use the seniority and reinstatement provisions of his collective bargaining agreement to permit him to return to work as a journeyman electrician. Like in *Peerless*, our task is not to determine the merits of that position, but rather to consider whether the agreement is susceptible to that construction. In my view, it clearly is. *Peerless* is indistinguishable from the instant case, and supports the district court's view that this dispute is arbitrable.

In this case, the majority has abandoned this circuit's long-standing approach in favor of arbitrating labor disputes, advancing its own opinion of the merits of this case instead of enforcing the parties' agreement to leave that to the arbiter. That is not our role; we are to consider whether the matter is subject to arbitration (which, in this case, it is), and then leave the decision on the merits to the arbiter. If the majority's view is sustained, the courts in this circuit will feel free to examine the merits of every labor dispute. If after that examination the court believes that the grievant has a weak case, it will feel free to grant summary judgment to an employer on the theory that the dispute is not arbitrable. This would be inconsistent not only with the Supreme Court

decisions on arbitration, but of this court as well.  It is an approach that we should not take.

$$\rule{5cm}{0.4pt}$$