NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0164n.06

**FILED**
Mar 03, 2015
DEBORAH S. HUNT, Clerk

# UNITED STATES COURTS OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NETJETS ASSOCIATION OF SHARED AIRCRAFT PILOTS, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN |
| NETJETS AVIATION, INC., | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) ) ) | |

BEFORE:     BOGGS, ROGERS and STRANCH, Circuit Judges

ROGERS, Circuit Judge.  The pilots' union for NetJets Aviation, Inc. appeals the district court's summary judgment order refusing to compel NetJets to arbitrate the discharge of Peter Elmore, a management pilot for NetJets.  The crux of the question on this appeal, as the parties have framed it, is whether the collective-bargaining agreement between the union and NetJets commits claims relating to the discharge of a management pilot to a grievance and arbitration procedure.  Because the text of this collective-bargaining agreement is ambiguous as to whether management pilots fall under the class of employees whose disputes can be grieved and arbitrated, the statutory presumption in favor of arbitrability applies and arbitration is required.

NetJets Aviation, Inc. provides private jet service to fractional owners and lessees.  Complaint at 2, R. 1, PAGEID# 2, Answer at 2, R. 8, PAGEID# 63.  It is thus an air carrier subject to the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 et seq., §§ 181 et seq.

(RLA). Complaint at 2, R. 1, PAGEID# 2, Answer at 2, R. 8, PAGEID# 63. NetJets Association of Shared Aircraft Pilots became the certified bargaining representative of NetJets' pilots in 2008, acceding to the existing Collective Bargaining Agreement (CBA) between NetJets and the pilots' previous union. Complaint Exhibits 1 & 3, R. 1, PAGEID# 12, PAGEID# 46.

Pilots—the members of the union—are ranked in a list by order of seniority. CBA Section 5.3, R. 27-2, PAGEID# 290-91. Their ranking on this list is determinative for various personnel actions such as promotions and assignments. CBA Section 5.1, R. 27-2, PAGEID# 290. A management pilot is "[a] manager who holds a seniority number on the NetJets Aviation, Inc. Seniority List." CBA Section 3.45, R. 27-2, PAGEID# 286. Management pilots are limited in how much flight duty they can perform, and many union rights and privileges do not apply to them. CBA Section 5.5(D), R. 27-2, PAGEID# 294; CBA Section 5.5(B), R. 27-2, PAGEID# 291-92. However, management pilots retain and accrue seniority and pay service fees to the union. CBA Section 5.5(B), R. 27-2, PAGEID# 291; CBA Section 5.5(G), R. 27-2, PAGEID# 295. One important consequence of this is that, if they leave management and return to "line flying" (that is, ordinary pilot duty), they retain their positions on the seniority list and do not need to start from the bottom again. CBA Section 5.5(E), R. 27-2, PAGEID# 294.

NetJets hired Peter Elmore as a pilot in June 2001. Complaint at 3, R. 1, PAGEID# 3; Answer at 3, R. 8, PAGEID# 64. In 2012, he was a management pilot for NetJets. Complaint at 3, R. 1, PAGEID# 3; Answer at 3, R. 8, PAGEID# 64. On September 24, 2012, NetJets terminated Elmore's employment for an alleged violation of its business-expense policy. R. 27, PAGEID# 313. Elmore immediately filed a grievance with the union, claiming that his discharge was based on incorrect facts and thus there was no "just cause" for discharging him as required under the CBA for discharging employees. *Id.* at 314–315. NetJets refused to process

the grievance, arguing that Elmore's status as a management pilot placed his discharge outside the scope of the grievance and arbitration provisions of the CBA. *Id.* at 316; Answer at 4-5, R. 8, PAGEID# 65-66.

On October 24, the union filed suit against NetJets in federal court, seeking an injunction pursuant to the RLA compelling NetJets to arbitrate Elmore's grievance. Complaint at 6, R. 1, PAGEID# 6. With the consent of both parties, the case was referred for final decision to a magistrate judge pursuant to 28 U.S.C. § 636(c), and the magistrate judge's actions are accordingly here referred to as those of the district court. R. 14, PAGEID# 87. The parties subsequently filed cross motions for summary judgment. R. 26, PAGEID# 117; R. 27, PAGEID# 252. On January 3, 2014, the magistrate judge issued an opinion and order granting NetJets' motion and denying the union's motion. R. 32, PAGEID# 537. The court reasoned that because the CBA unambiguously excluded disputes between management pilots and NetJets from the scope of arbitration before the System Adjustment Board, NetJets could not be forced to arbitrate the dispute over Elmore's discharge. R. 32, PAGEID# 551.

The district court first noted that the RLA states that minor disputes—disputes "grounded in the CBA"—can only be arbitrated. Opinion and Order, R. 32, PAGEID# 542. But at the same time, in the court's view, "[t]he RLA also permits unions and air carriers . . . to exempt by agreement specific disputes from arbitration." *Id*. Thus, under the RLA, whether a dispute is subject to arbitration is still "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id.* at PAGEID# 543 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Thus, the district court suggested, any dispute excluded by the parties from arbitration under the CBA does not "arise[] from a right conferred by the CBA," and therefore is not a minor dispute. *Id.* at

PAGEID# 544. Therefore, the district court applied the standard generally applicable to labor arbitrations under the Labor Management Relations Act, which is that the presence of an arbitration clause in the CBA creates a presumption of arbitrability that can be rebutted only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at PAGEID# 544 (quoting 475 U.S. at 650).

Turning to the text of the CBA, the district court found that the parties had unambiguously agreed to exclude management pilots from arbitration proceedings, based on the language in two portions of the CBA. First, Section 22.3 of the CBA established the system board's arbitral jurisdiction:

> The Board will have jurisdiction over disputes between any crewmember covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement. The jurisdiction of the Board will not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing agreements by the parties hereto. The Board will have no authority to modify, amend, revise, add to, or subtract from any of the terms or conditions of this Agreement.

*Id.* at 546; CBA Section 22.3, R. 27-2, PAGEID# 306. Second, Section 3.17 defined "crewmember" as "a non-management pilot on the NetJets Aviation, Inc. Pilot Seniority List." Opinion and Order, R. 32, PAGEID# 547; R. 27-2, PAGEID# 283. Taken together, the district court reasoned, these two clauses unambiguously excluded disputes concerning management pilots from arbitration, since only disputes involving "crewmembers" were subject to arbitration and management pilots were not crewmembers. Opinion and Order, R. 32, PAGEID# 551. The district court therefore granted summary judgment for NetJets, refusing to order arbitration. *Id.* The union timely appealed. R. 34, PAGEID# 554.

The dispute over Elmore's discharge is a minor dispute under the framework of the RLA, which means that, at the very least, the parties may commit the dispute to arbitration under the

RLA. A minor dispute "involv[es] the interpretation or application" of an existing CBA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994). In particular, a minor dispute "may be conclusively resolved by interpreting the existing agreement." *Consol. Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989). Here, Elmore's original grievance form explicitly invoked Section 2.4 of the CBA. R. 27-3, PAGEID# 315. In order to determine whether Elmore should be reinstated, one must first determine whether Elmore is protected by Section 2.4's just cause provision—a question of CBA interpretation—and then, if yes, determine whether there was just cause for his discharge—a question of CBA interpretation and application. Indeed, there is nothing in the record indicating that Elmore and the union rely on anything other than the CBA's provisions in seeking his reinstatement. Even if the dispute were not subject to arbitration, the substantive right his grievance seeks to enforce arises from the CBA.

This might in itself be sufficient to hold that arbitration is required, as the RLA arguably requires arbitration of minor disputes even absent the parties' agreement to arbitrate. We have described arbitration as the "exclusive" forum for resolving minor disputes. *Int'l Bhd. of Teamsters, AFL-CIO, Teamsters Local Union No. 2727 v. United Parcel Serv. Co.*, 447 F.3d 491, 498 (6th Cir. 2006) (quoting *Pa. R.R. Co. v. Day*, 360 U.S. 548, 550 (1959)); *see Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 336-37 (3d Cir. 1993). However, the parties agree that if the CBA unambiguously excludes a minor dispute from the scope of arbitration, that dispute is not subject to arbitration. Both parties would have us apply the presumption in favor of arbitration under the Labor Management Relations Act (LMRA): "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). We need not determine whether this approach is appropriate under the RLA because in any event the CBA in this case does not unambiguously exclude Elmore's grievance from arbitration procedures. Although the arbitration provision in the CBA by its terms applies only to crewmembers, and the CBA defines crewmembers as non-management pilots, several other provisions of the CBA unambiguously treat management pilots as crewmembers, making it plausible that management pilots are crewmembers for purposes of the arbitration provision as well. Therefore, the arbitration provision is susceptible of an interpretation that covers Elmore's grievance. Elmore's grievance must be arbitrated, notwithstanding the district court's ruling to the contrary, which we review *de novo*. *See Int'l Ass'n of Machinists, Local Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010).

The CBA is ambiguous as to whether the parties agreed to grieve and arbitrate disputes involving management pilots. Sections 21 and 22 of the CBA, which outline grievance and arbitration provisions, respectively, apply explicitly to disputes involving "crewmembers." R. 27-2, PAGEID# 297-311. Section 3.17 defines "crewmember" as "a non-management pilot on the NetJets Aviation, Inc. Pilot Seniority List." R. 27-2, PAGEID# 283. This on its own is unambiguous, but other sections of the CBA create ambiguity by making it explicit that management pilots are crewmembers, at least for those provisions. Thus either Sections 21 and 22 use "crewmember" inconsistently with that word's contractual definition, or else management pilots are "crewmembers" for some substantive provisions but not others. The CBA therefore does not unambiguously exclude disputes involving management pilots from arbitration.

Several provisions of the CBA use "crewmember" in ways that clearly indicate that management pilots are crewmembers in at least some contexts. Section 5.3(A), describing the

contents of the seniority list, states: "The Seniority List will include the following information for each crewmember: . . . (7) status as a management crewmember, if applicable." R. 27-2, PAGEID# 290. Item (7) would be nonsensical if management pilots could not be crewmembers; there can be no such thing as a management non-management pilot. In this particular provision, it is unambiguous that management pilots are crewmembers, and that "crewmember" does not mean what Section 3.17 says it means.

Moreover, read in conjunction with the definition of "management pilot," Section 5.3—the provision establishing guidelines for the seniority list—unambiguously treats management pilots as crewmembers. The entire Section refers only to crewmembers appearing on the list; Section 5.3(B) begins, "All crewmembers will be listed on the Seniority List . . ." and Section 5.3(A) sets out the information that must be listed for "each crewmember." R. 27-2, PAGEID# 290-91. This strongly suggests that only crewmembers appear on the list; to the extent a non-crewmember would appear, Section 5.3 would provide no guidance as to what position on the list the non-crewmember should have and what information the list should provide. A management pilot, meanwhile, is "[a] manager who holds a seniority number on the NetJets Aviation, Inc. Seniority List." CBA Section 3.45, R. 27-2, PAGEID# 286. If only crewmembers appear on the seniority list, and a management pilot is a manager on the seniority list, then any management pilot must be a crewmember under Section 5.3. Thus reading these provisions in accordance with the definition of "crewmember" in Section 3.17, which explicitly excludes management pilots, would make it impossible for anyone to be a management pilot.

Section 5.5, on the "Rights and Restrictions Upon Management Pilots," itself treats management pilots as crewmembers, at least in one subsection. Section 5.5(A) states: "No more than five percent (5%) of the crewmembers on the Seniority List may be classified as

management pilots at any time." R. 27-2, PAGEID# 291. This suggests that at least some crewmembers on the Seniority List are management pilots. Because all management pilots are on the Seniority List, this in turn implies that all management pilots are crewmembers.

Finally, even the CBA's definition section suggests some ambiguity over the crewmember status of management pilots. "Active Crewmember" is defined in Section 3.1 as "[a] crewmember on the NetJets Aviation, Inc. Pilot Seniority List who is not: (1) on a Leave of Absence; (2) in a Management position; or (3) in a Temporary Management position as defined in Section 5." R. 27-2, PAGEID# 281. Given the definition of crewmember under Section 3.17, (2) is completely redundant. "Management position" refers to management pilots, but under the definition of "crewmember" in Section 3.17 there is no need to exclude management pilots from a list of "crewmembers." It is also not apparent why the parties to the CBA might have wanted to emphasize the non-inclusion of management pilots in this context; the word "crewmember" in the phrase "Active Crewmember" should have made it clear enough.

The thrust of these examples is not that "crewmember" always includes "management pilot" everywhere in the CBA, but rather that the definition of "crewmember" in Section 3.17 does not control each instance of the term. Indeed, NetJets itself argues that "crewmember" is sometimes used synonymously with "employee," a term given a broader definition in the CBA. Appellee's Br. at 22 n.4. Thus, absent particular reasons to conclude otherwise, it is plausible that any particular instance of "crewmember" in the CBA refers to a broader class than that defined in Section 3.17, and in particular, includes management pilots.

Sections 21 and 22—the dispute resolution provisions of the CBA—make clear that grievance and arbitration procedures apply to "crewmembers," but there is no clear suggestion that the narrow definition of "crewmember" from Section 3.17 applies to either Section. Section

21 lays out grievance procedures, which are the first step to resolving a union dispute. Under Section 21.4, arbitration before the System Board under Section 22 is available only upon appeal from an adverse grievance response. R. 27-2, PAGEID# 301–02. The procedures in this Section refer only to the union, the company, and "crewmembers" as possible parties to a grievance, and they indicate that a grievance over a discharge can arise only from a discharge of a crewmember. R. 27-2, PAGEID# 297–304. There is nothing in this context suggesting that the use of "crewmembers" was intended to exclude management pilots from grievance procedures.

Section 22 also gives no indication that "crewmember," as used to indicate a possible party to an arbitration proceeding, should be read narrowly. On the contrary, there are hints that a broad sense of the word was intended. Section 22.1(A) establishes the System Board of Adjustment (the arbitral body for the CBA) "[i]n compliance with Section 204, Title II, of the Railway Labor Act, as amended," which is codified at 45 U.S.C. § 184. R. 27-2, PAGEID# 305. That provision states in relevant part: "The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . may be referred . . . to an . . . adjustment board." 45 U.S.C. § 184. Section 22.3 of the CBA explicitly echoes this language, but substitutes "crewmember covered by this Agreement" for "employee": "The Board will have jurisdiction over disputes between any crewmember covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement." R. 27-2, PAGEID# 306. This parallel language makes it at least plausible that the jurisdiction clause is intended to have the maximum scope permitted under the RLA. Further, "covered by this Agreement" is redundant under any reasonable interpretation of "crewmember," but it suggests an emphasis on the breadth, rather than on the

narrowness, of the System Board's jurisdiction; what matters, it appears to say, is not whether one is technically a "crewmember" but whether one is "covered by this Agreement." Such an interpretation is also more consistent with the Board's purpose, stated in Section 22.1(B), which is "to adjust and decide disputes which may arise under the terms of this Agreement when such disputes have been properly submitted to the Board." R. 27-2, PAGEID# 305. Taking the "when such disputes" clause as a procedural limitation, the purpose appears to be resolving substantive disputes over the CBA's meaning, a purpose best served by interpreting the Board's jurisdiction broadly to allow it to resolve substantive disputes involving the CBA rights, if any, of management pilots. Thus, it is at least plausible to interpret Sections 21 and 22 as including management pilots within their scope. Because the arbitration provision of the CBA is "susceptible of an interpretation that covers" Elmore's grievance (and that is the standard under *Warrior & Gulf*, 363 U.S. at 582), Elmore's grievance is subject to mandatory arbitration.

NetJets' reliance on *United Steelworkers of America, Local No. 1617 v. General Fireproofing Co.*, 464 F.2d 726 (6th Cir. 1972), to argue that the definition of "crewmember" in Section 3.17 explicitly excludes management pilots from the scope of arbitration under the CBA is misplaced. In that decision, we held that a CBA definition of "employee" that expressly excluded "supervisors" barred a supervisor from arbitrating under a CBA provision agreeing to arbitrate claims by "employees." *Id.* at 729. In that respect, the decision would provide guidance if the only CBA provisions before the panel were Section 3.17, defining "crewmember" to exclude management pilots, and Sections 21 and 22, laying out dispute resolution procedures for "crewmembers." But here there are other CBA provisions that create ambiguity by casting doubt on the applicability of the definition in Section 3.17; there was no reason for the *General Fireproofing* court to doubt the applicability of the definition of

"employee" in all portions of that CBA. This case thus does not compel the conclusion that this CBA unambiguously excludes management pilots from arbitration.

Finally, we express no opinion as to the merits of Elmore's grievance—whether he has the right under the CBA not to be dismissed without just cause, and whether there was just cause to dismiss him. These are matters for the adjustment board to determine in arbitration.

For the foregoing reasons, the district court's grant of summary judgment for NetJets is **VACATED**, and we **REMAND** to the district court with instructions to grant summary judgment for the union and order arbitration of Elmore's grievance.