

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-2006

# Local 827 v. Verizon NJ Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-3613

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Local 827 v. Verizon NJ Inc" (2006). *2006 Decisions.* Paper 517.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/517

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3613

———


LOCAL 827, INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, AFL-CIO

v.

VERIZON NEW JERSEY, INC.;
VERIZON SERVICES CORPORATION,

<u>Appellants</u>

———


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 03-cv-03523, 03-cv-03613, 03-cv-06097)
District Judge: Honorable Katharine S. Hayden


———


Argued July 13, 2006

Before: SLOVITER, McKEE and RENDELL, <u>Circuit Judges</u>

(Filed  August 17, 2006)

———


Thomas M. Beck    (Argued)
Nicholas J. Sanservino, Jr.
Jones Day
Washington, DC  20001

    Attorneys for Appellants

Mark E. Belland
Steven J. Bushinsky
Nancy S. Sokol   (Argued)
O'Brien, Belland & Bushinsky
Northfield, NJ  08225

    Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this appeal, we must decide between the conflicting conclusions reached by two district judges in the same court regarding the interpretation of the same collective bargaining contract.  One has held that the contract's arbitration clause is narrow, while the other has held that it is broad.  Although only one of the cases is on appeal before us, we write to resolve the conflict because the interpretation of that clause is central to our disposition.

In this case, appellants Verizon New Jersey, Inc. and Verizon Services Corporation (collectively, "Verizon") appeal from the District Court's order granting summary judgment to Local 827, International Brotherhood of Electrical Workers, AFL-CIO ("Local 827").  Local 827 brought suit against Verizon, seeking to compel arbitration of three grievances relating to overtime.  Verizon contends that these grievances do not fall within the scope of the arbitration clause of the parties' Collective Bargaining Agreement ("CBA").  Both parties moved for summary judgment and the District Court granted Local 827's motion, finding as a matter of law that grievances relating to the assignment of overtime work are substantively arbitrable under the CBA.

The District Court had jurisdiction pursuant to 29 U.S.C. § 185.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

2

# I.

Local 827 represents Verizon's non-supervisory employees with respect to collective bargaining for rates of pay, wages, hours of employment, and other conditions of employment. The parties' CBA contains a "Plant Contract" covering the Plant and Engineering Departments and an "Accounting Contract." It is the Plant Contract that is at issue here and which Local 827 contends covers arbitration of the three overtime grievances.

Grievance One alleges that Verizon violated the CBA and a related prior agreement by improperly assigning overtime work involving Facilities Technicians in Local 827's Northern Suburban District. Specifically, the grievance alleged violations of Article II (Recognition and Collective Bargaining) of the CBA,[1] the implied covenant of good faith and fair dealing, and past practices under the CBA.

Grievance Two alleges that Verizon violated the provisions of Article II of the CBA by improperly assigning overtime work involving Repair Service Clerks in Local 827's Southern Suburban District. This grievance relates to Verizon's alleged violations of additional provisions of the CBA as well as an established past practice of utilizing an overtime list.

Grievance Three alleges that Verizon violated the provisions of the CBA by improperly assigning construction overtime work involving a Facilities Technician (a job

---

[1] Article II of the CBA provides, inter alia: "The Company recognizes and acknowledges the Union as the designated and selected representative of the nonsupervisory employees of its Plant Department and Engineering Department for the purpose of collective bargaining and as their sole collective bargaining agency in respect to rates of pay, wages, hours of employment, and other conditions of employment, and for the purpose of entering into understandings and agreements with reference thereto. . . ." App. at 492.

3

classification under the agreement) in Local 827's Southern Jurisdictional Area. Specifically, the grievance alleged violations of Articles II and XI (Grievance Procedure) of the CBA, the implied covenant of good faith and fair dealing, and past practices.

During the grievance proceedings, Local 827 argued that for over twenty-five years, an overtime list tracked the hours worked by each employee. This list was to serve as the basis for overtime assignments, and Verizon was obligated to offer overtime first to those employees with the least amount of overtime. Local 827 argued that by failing to assign overtime in accordance with the overtime list, Verizon violated Article II, the implied covenant of good faith and fair dealing, and past practices under the CBA. Local 827 also alleged violations of Articles IV (Working Conditions), and V (Wages) of the CBA. All three grievances were processed through the grievance procedures outlined in Article XI of the CBA, and Verizon denied each grievance at each step of the grievance process. Local 827 then sought to arbitrate the three grievances, but Verizon refused to arbitrate, contending that the grievances fell outside the scope of the Arbitration Clause of the CBA. Local 827 then brought suit to compel arbitration.

The District Court granted Local 827's motion for summary judgment and held that the grievances were arbitrable.

**II.**

The Arbitration Clause of the CBA, Article XII, states:

Section 1. <u>Only the matters specifically made subject to arbitration</u> in Article VII, Force Adjustments and Termination Allowances, Section 4, paragraph 4; Article VIII, Separations From the Service--Other Than Layoffs, Section 2; Article X, Interpretation and Performance, Section 2; Article XI, Grievance Procedure, Section 4; Article XV, Changes in the Verizon Pension Plan and the Sickness and Accident Disability Benefit Plan, Section 3;

Article XVI, Seniority in Promotions, Section 4; and Article XXII, Verizon Services Transfer Plan and Intercompany Job Bank Program; <u>shall be arbitrated</u>.

. . .

Section 2. The Board of Arbitration in its decision shall be bound by the provisions of this Agreement and shall not have the power to add to, subtract from, or modify any provision of this Agreement.

Section 3. The Procedure for Arbitration is set forth in Exhibit III attached to and made part of this Agreement.

App. at 500 (emphasis added).

The District Court found that the grievances were arbitrable on the ground that they fell within Article XI, Section 4. That section, which is headed Grievance Procedure, is one of the subject matters listed in Article XII as subject to arbitration. Article XI establishes a three-step grievance procedure. Section 4 sets forth the top-step of the grievance procedure. It states:

If any grievance involving a controversy over the true intent and meaning or the application, in any particular instance, of any provision of this Agreement, is not satisfactorily adjusted under the provisions of Sections 1 and 2 above, the Union's written notice to the Director-Labor Relations appealing the grievance specified in Section 3 above shall identify, by Article and Section, the particular provision(s) of the Agreement at issue.

App. at 499.

Article XI, Section 3 sets forth the procedure when a grievance is not resolved at the first or second step of the grievance procedure. Article XI, Section 3, provides:

If the grievance is not satisfactorily adjusted under the

5

provisions of Sections 1 and 2 above, the Union may appeal the grievance by written notice, which notice shall set forth the Union's position with respect to such grievance, to the Director-Labor Relations designated by the Company within fourteen (14) days after discussions have been concluded under Section 2 above. Conferences shall be held promptly between the Union and the Company representatives, or such other representatives as either party may select, in a further effort to reach a satisfactory adjustment of the grievance. Fourteen (14) days shall be allowed for adjustment of the grievance at this level. If a satisfactory adjustment is not reached, the Company, within fourteen (14) days after discussion have been concluded at this level, shall submit to the Union in writing a final statement of its position. <u>The case shall then be considered closed unless the grievance is arbitrable</u> and arbitration proceedings are initiated under the provisions of Article XII, Arbitration, within thirty (30) days after the period allowed for adjustment at this level.

App. at 499 (emphasis added).

Based on its reading of the CBA, and specifically of the provisions quoted above, the District Court concluded that the grievances were arbitrable and granted Local 827's motion for summary judgement. The District Court found that "[a]lthough none of the matters listed in the arbitration provision references overtime in general, or the assignment of overtime in particular, the existence of Article XI, Grievance Procedure, Section 4 in the Arbitration Article cannot be ignored." App. at 24.

Although Article XI, Section 4 merely sets forth the procedures that must be taken to appeal certain grievances to the top step of the grievance process, the District Court stated that "the inclusion of entire Section 4 of Article XI in Article XII, Section 1 perforce includes the substance of the grievances referenced in Section 4, described as a 'controversy over the true intent and meaning or application' of the Agreement." App. at 26. In so holding, the District Court rejected Verizon's

6

argument that Article XI, Section 4, only dealt with the appropriate scope of a grievance submitted to arbitration. The District Court held that Verizon's interpretation of the clause amounted to a "tortured reading" of it. App. at 26. The Court also rejected Verizon's contention that Article XI, Section 3's distinction between arbitrable and non-arbitrable grievances indicates that the CBA "contemplates that a grievance is arbitrable only if it relates to one of the express items listed in Article XII, Section 1." App. at 27.

The District Court's holding is in conflict with the holding of another district court judge in New Jersey interpreting the same CBA provisions. In Local 827, Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc., Civ. No. 03-3612 (D.N.J. filed June 25, 2005), Judge Greenaway held that the Article XII of the CBA contains a narrow arbitration clause and that disputes over enhanced employee benefits, which are not listed in Article XII, are not subject to arbitration.

In that case, Local 827 brought suit on behalf of one of its members, Dellisanti, who was told he would likely be laid off and was given the option of resigning and claiming certain enhanced employee benefits. He opted to do so, but then attempted to rescind his resignation. Verizon refused to accept the rescission. Local 827 sought to arbitrate but Verizon refused and Local 827 brought a motion to compel arbitration. Local 827 argued, inter alia, that the arbitration clause was broad because it included Article XI, Section 4, and thus encompassed Dellisanti's grievance. Judge Greenaway rejected this argument. He stated, "The language of Section 4 outlines the procedural requirements for a top-step grievance to be arbitrated, rather than making all the disputes subject to arbitration. . . . [T]he language of Article XII is unambiguous in its explicit mandate that only those matters enumerated are 'specifically subject to arbitration.'" App. at 57 (quoting Article XII, Section 1).[2]

## III.

---

[2]No appeal was taken from Judge Greenaway's decision.

On review of a grant of summary judgment, this court is required to apply the same test that the district court should have used. Taking the non-movant's factual allegations as true, we must determine whether the moving party is entitled to judgment as a matter of law. E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, 812 F.2d 91, 94 (3d Cir. 1987) (citation omitted).

The relevant labor law is well-settled. Although "arbitration is clearly the preferred method for resolving disputes between the union and the employer," Butler Armco Independent Union v. Armco, Inc., 701 F.2d 253, 255 (3d Cir.1983), it "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Technologies, Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986) (citations omitted).

The District Court in this case stated that there was some ambiguity in the CBA's arbitration clause, as evidenced by the fact that several arbitrators had held that the clause was broad, while others had found it narrow. The Court reasoned that therefore the strong presumption of arbitrability must tip the balance. The Court interpreted Article XI, Sections 3 and 4, and Article XII "as defining grieved matters that the Union can bring into arbitration to be those grievances that involve a controversy over the true intent and meaning or the application . . . of any provision of the CBA, which have been processed through the steps set forth in Article XI, Section 3." App. at 28-29.

The Supreme Court has previously set forth the applicability of the presumption of arbitrability. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with

8

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 650 (citations, punctuation and quotation marks omitted). This court, however, has held that the presumption of arbitrability does not apply in all circumstances. Where the arbitration provision is narrowly crafted, "we cannot presume, as we might if it were drafted broadly, that the parties here agreed to submit all disputes to arbitration. . . ." Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 888 n.5 (3d Cir. 1992).

We distinguished the narrow arbitration clause at issue in Trap Rock, in which we refused to apply the presumption of arbitrability, from the broad arbitration clauses at issue in E.M. Diagnostic and Lukens Steel Co. v. United Steelworkers, 989 F.2d 668 (3d Cir. 1992), in which we applied the presumption. In E.M. Diagnostic, the arbitration clause applied to "any dispute arising out of a claimed violation of this [Collective Bargaining] Agreement. . . ." 812 F.2d at 92 (emphasis omitted). We noted that the E.M. Diagnostic arbitration provision did not by its explicit terms expressly limit the range of arbitrable disputes. Rather, it provided for arbitration of all disputes arising from alleged violations of the CBA. Similarly, the arbitration clause in Lukens included a clause providing for arbitration "[s]hould any differences arise between the Company and the Union as to the meaning and application of, or compliance with, the provisions of this Agreement. . . ." 989 F.2d at 673. The agreement between Lukens Steel and the Union also "expressly exclude[d] certain disputes from arbitration," id. at 673 n.4, showing that "'the parties knew how to remove issues from arbitration when they wanted to.'" Id. (quoting Eicleag Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1058 (3d Cir. 1991)); see Trap Rock, 982 F.2d at 888 n.5.

The arbitration clause in Trap Rock was much narrower and restricted
the arbitrator's jurisdictional reach:

[T]he Arbitrator's powers are limited as follows:

9

He shall have no power to add to, or subtract from, or modify any of the terms of any Agreement . . . .
He shall have no power to substitute his discretion for the Employer's discretion in cases where the Employer is given the discretion by this Agreement or by any supplementary Agreement, except that where he finds a disciplinary layoff or discharge is in violation of this Agreement, then he may make appropriate modifications of the penalty.

Id. at 885. The CBA in that case also reserved to the Employer "the right, which right shall not be subject to Arbitration, to determine the qualifications of any Employee covered hereunder and if, in the Employer's opinion, the Employee does not meet the qualifications or fails to perform his duties properly, then the Employer can Discharge or demote the Employee, whichever the Employer desires. The Employer will notify the Emplolyee [sic] and Union of such action." Id. (alteration in original). The issue that the union sought to arbitrate involved the discharge of an employee for failure to perform his duties.

This court found that the grievance was not arbitrable because it was not listed in the CBA's narrow arbitration clause. We noted that the clause "expressly limit[ed] the range of arbitrable disputes to a single category or function, such as limiting the arbitrator's power to modifying a penalty where only disciplinary layoffs or discharges which violate the terms of the CBA are involved." Id. at 888 n.5. We concluded that, "[b]ecause the arbitration provision . . . [was] narrowly crafted to apply only to certain disciplinary discharges and layoffs, we [could] not presume, as we might if it were drafted broadly, that the parties here agreed to submit all disputes to arbitration . . . Thus, the presumption of arbitrability . . . [is] inapposite." Id.

The case before us largely turns on the question of whether the arbitration clause is broad. If the arbitration clause is clearly broad or ambiguous, we will apply the presumption of arbitrability. If the clause is not ambiguous and clearly delimits the issues subject to arbitration, the presumption of arbitrability does not apply.

10

## IV.

Article XII, Section 1, the arbitration clause in the CBA, provides that "[o]nly the matters specifically made subject to arbitration [in specific provisions]. . . shall be arbitrated." App. at 500. The clause then lists five specific issues that can be arbitrated. Because the arbitration clause clearly limits matters subject to arbitration, the clause at issue here is clearly unlike those in E.M. Diagnostics and Lukens. It does not refer expansively to "any" disputes, but rather to disputes about issues that are specifically enumerated. It clearly forecloses the possibility that other issues could be arbitrated by providing that the list is exclusive. Cf. Cummings v. Fedex Ground Package System, Inc., 404 F.3d 1258, 1262 (10th Cir. 2005) ("Here, as the district court ruled, we are presented with a narrowly drawn arbitration clause. It is not the type of broad provision that refers all disputes arising out of a contract to arbitration. Rather, the parties clearly manifested an intent to narrowly limit arbitration to specific disputes regarding the termination of the Operating Agreement.") (citation, internal quotations marks, and alterations omitted). Thus, we conclude that the arbitration clause is narrow and that the District Court erred by applying the presumption of arbitrability.[3]

We are not convinced by Local 827's argument that the arbitration clause is broad. Local 827's reading of Article XI, Section 4, ignores the very language of that Article. Article XI, Section 4, provides that if the parties have a dispute over the true intent, meaning, or application of the CBA which is not satisfactorily adjusted through the lower levels of the grievance procedure (specified in Sections 1 and 2 of Article XI), then the Union's written notice of appeal to the Director-Labor Relations (specified in Section 3) shall identify, by Article and Section, the

---

[3]In reviewing the parties' history, it appears that Local 827 sought to have a broad arbitration provision included in the CBA but was unsuccessful. We are not inclined to impose on parties provisions that they themselves did not negotiate.

particular provisions of the CBA at issue.  Section 3 specifies the procedures for appealing a grievance to the Director-Labor Relations.  After this final level of appeal, the "case shall then be considered closed unless the grievance is arbitrable. . . ."  App. at 499.

Clearly, the inclusion of Article XI, Section 4, within Article XII's arbitration clause provides only for arbitration regarding the scope of the grievance.  As noted supra, Section 4 of Article XI provides that the union must provide written notice to the Director-Labor Relations that identifies, by Article and Section, the particular provision(s) of the Agreement at issue.  If the parties cannot agree as to which provisions of the agreement are at issue (e.g. Local 827 believes a dispute falls under a provision that is ultimately subject to arbitration while Verizon believes the dispute involves a non-arbitrable provision), the parties may arbitrate the question of which provisions of the CBA are at issue.

Any other reading would be contrary to the words of the CBA. Section 3 of Article XI provides that the Union may appeal to the Director-Labor Relations after which the case is considered closed unless it involves one of the provisions of the CBA listed in Article XII.  Sections 3 and 4 of Article XI provide threshold requirements that the Union must fulfill before it can seek arbitration, but fulfilling these requirements is not sufficient.  The matter the Union seeks to arbitrate must fall within the Articles listed in Article XII as subject to arbitration.

Given the clarity of the language in this CBA, we find that the bargaining history cited by Local 827 is inapposite.  If a contract "'is explicit and unambiguous regarding whether the Grievance is arbitrable; there is no need to look to extrinsic evidence,'" Lukens, 989 F.2d at 673 (quoting Local 13, Int'l Fed'n of Professional & Technical Eng'rs v. Gen. Elec. Co., 531 F.2d 1178, 1183 n. 13 (3d Cir.1976)) (punctuation omitted).  In addition, we need not look to the language in the parties' other agreements, as urged by Verizon.  Insofar as the existence of contrary interpretations of the arbitration clause suggests that there may be a modicum of ambiguity in the language of the

12

arbitration clause, we note that "'a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt.'" PaineWebber Inc. v. Hofmann, 984 F.2d 1372, 1377 (3d Cir. 1993) (quoting PaineWebber Inc. v. Hartmann, 921 F.2d 507, 513 (3d Cir. 1990)).

**V.**

For the reasons set forth above, we will reverse the District Court's grant of summary judgment and direct that summary judgment be granted to Verizon.