**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1689
_____

SERVICE EMPLOYEES INTERNATIONAL
UNION HEALTHCARE PENNSYLVANIA

v.

HERITAGE VALLEY HEALTH SYSTEM,
                                                        Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cv-00393)
District Judge: Hon. J. Nicholas Ranjan
_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 19, 2020
_____

Before: JORDAN, KRAUSE, and RESTREPO, *Circuit Judges.*

(Filed: February 1, 2021)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

Resolution of this appeal requires us to determine whether a collective bargaining agreement between a hospital and a nurses' union mandates that a staffing dispute be arbitrated. Because we agree with the District Court that the plain language of the agreement requires arbitration, we will affirm.

## I.    Facts and Procedural History

Heritage Valley Health System ("Heritage Valley") owns and operates a hospital in Beaver, Pennsylvania that employs registered nurses represented by the Service Employees International Union Healthcare Pennsylvania ("Union"). The Union and Heritage Valley entered into a collective bargaining agreement effective from July 1, 2016 until June 30, 2019 (the "CBA"). Under the CBA, Heritage Valley was required to maintain certain nurse-to-patient staffing ratios in each unit of the hospital. The ratios were collectively bargained for between the parties and differed depending on the shift and hospital unit.

Heritage Valley also employs non-unionized patient care assistants. Patient care assistants do not require a nursing license and their responsibilities require less skill than those performed by the unionized nurses. Heritage Valley typically assigns patient care assistants to help three to four registered nurses, which means that each patient care assistant tends to many more patients than a single registered nurse during a shift.

The Union filed a grievance under the CBA in October 2018 alleging that Heritage Valley assigned registered nurses to work as patient care assistants on at least three separate dates, requiring the nurses to care for more patients than permitted by the

2

mandatory staffing ratios. The Union contended that "pulling" these nurses to work as patient care assistants breached multiple articles of the CBA and that Article 7 of the CBA required Heritage Valley to arbitrate the alleged breach.

Heritage Valley refused to arbitrate, arguing that its actions were both permitted under the CBA and excluded from the Agreement's arbitration clause by Article 10.5(a). Heritage Valley contends that Article 10.5(a) of the CBA requires the Union to submit its grievance to the "Professional Practice Committee" for a "recommended solution," and explicitly excludes arbitration as a means of resolution. Article 10.5 states in full:

> 10.5. <u>Voluntary Floating/Pulling/Use of Agency Nurses</u> The parties agree that it is in the interest of patient care that all staff assigned to a particular unit or work area shall be properly trained, oriented, and familiar with the policies and procedures of that unit or work area. To this end, the following guidelines shall apply:
>
> (a) Heritage Valley, Beaver shall not provide regular ongoing staffing in any area through the use of Agency personnel, temporary or contract nurses or floating/pulling of employees. In the event that such potential problem areas are identified, they shall be referred to the Professional Practice Committee for a recommended solution, and any dispute shall not be subject to the grievance and arbitration procedure in Article 7.

App. 85.

The Professional Practice Committee is an internal committee created by the CBA that is comprised of representatives from Heritage Valley and the Union. Article 10.1 dictates that, among other responsibilities, the Committee may develop recommendations regarding staffing that will be forwarded to Heritage Valley's administration, which must consider the recommendations but maintains the authority to set the hospital's staffing

3

levels.  In refusing to arbitrate, Heritage Valley invited the Union to consider submitting the "pulling" issue to the Committee for a recommended solution.

The Union declined the invitation and filed a lawsuit in District Court, claiming its grievance alleged an arbitrable violation of the CBA.  The parties agreed that the case presented a question of pure contract interpretation, that there was no dispute of material fact, and that the case should be resolved on cross-motions for summary judgment.  App. 6-7.  Accordingly, the District Court proceeded to summary judgment on the contract interpretation issue.  The Court's interpretation of the CBA was that the Union's grievance constituted an arbitrable claim.  It therefore denied Heritage Valley's motion, granted summary judgment in the Union's favor, and ordered the Union's pending grievance be referred to arbitration in accordance with the procedures set forth in Article 7 of the CBA.  Heritage Valley filed this appeal.[1]

## II.    Standard of Review and Discussion

Unless the agreement clearly provides otherwise, the courts are tasked with interpreting agreements to determine whether the parties agreed to arbitrate the dispute in question.  *Rite Aid of Pa., Inc. v. United Food and Com. Workers Union, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010).  The District Court's interpretation and application of the parties' arbitration agreement is subject to our plenary review.  *Id.*  We have no factual findings to review, given that the parties "agree[d] that all material facts are undisputed." App. 28.

---

[1]  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." *United Steelworks of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). But given the "strong federal policy in favor of resolving labor disputes through arbitration," *see Rite Aid of Pa., Inc.*, 595 F.3d at 131, doubts regarding whether an arbitration clause covers the dispute "should be resolved in favor of coverage," *United Steelworkers of Am.*, 363 U.S. at 582-83.

Where, as here, the collective bargaining agreement contains a broad arbitration clause, there is a presumption of arbitrability, and that presumption can be rebutted by "only the most forceful evidence of a purpose to exclude the claim from arbitration." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).[2] Accordingly, to rebut the presumption, the opposing party must identify language in the agreement that expressly excludes the dispute from arbitration, or provide "strong and forceful" evidence of the parties' intent to not arbitrate the matter. *United Steelworkers of Am. v. Lukens Steel Co.*, 969 F.2d 1468, 1475 (3d Cir. 1992). But where the contract's language "is explicit and unambiguous regarding whether the [g]rievance is arbitrable[,] there is no

---

[2] Article 7 of the CBA is titled "Grievance Procedure" and it details the steps to arbitration. Article 7.2 states that "[a] grievance which has not been resolved" by an internal process may "be referred to arbitration by the Union[.]" App. 79. Article 7.1 defines grievance broadly as "any dispute or complaint arising between the parties hereto, under or out of this Agreement or the interpretation, application, or any alleged breach thereof . . .." *Id.* at 78. And under Article 7.5, the arbitrator "shall have jurisdiction" over "disputes arising out of grievances as defined in Section 7.1 of this Article[.]" *Id.* at 79.

5

need to look to extrinsic evidence." *Local 827, IBEW v. Verizon N.J., Inc.*, 458 F.3d 305, 312 (3d Cir. 2006) (quoting *Lukens*, 989 F.2d at 673).

### A. CBA's plain language

Heritage Valley hinges its refusal to arbitrate on its interpretation of Article 10.5 of the CBA, which it claims expressly excludes the Union's grievance from the CBA's arbitration provision. Specifically, Heritage Valley posits that Article 10.5 requires disputes over allegations of "pulling" nurses be referred to the Professional Practice Committee, and that the Committee's proposed solution is not subject to arbitration. The District Court properly rejected this interpretation as contrary to the CBA's plain language.

Under Pennsylvania law, it is well-settled that the intent of contracting parties is determined by the writing of the contract. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009). Because the CBA's plain language is clear that the Union's grievance is arbitrable, we need to look no further than the Agreement's writing to decide that the Union was entitled to summary judgment. *See Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1178 (3d Cir. 1979).

The first sentence of Article 10.5(a) states the hospital "shall not" provide ongoing staffing in any area of the hospital through the use of "pulling" nurses. App. 85. According to the CBA's plain language, therefore, the pulling of nurses despite the mandate that Heritage Valley not do so would constitute a violation of the CBA's terms. Such a violation qualifies as a grievance under the Article 7 arbitration clause, and the Union may refer unresolved grievances to arbitration. App. 78-79. Article 10.5(a)

6

instructs the Professional Practice Committee to handle "potential problem areas" involving staffing, not alleged CBA violations.  App. 85.  Moreover, Article 10.5(a) excludes disputes arising from the Committee's "recommended solution[s]" from arbitration; there is no suggestion that the exclusion extends to disputes arising from Heritage Valley's allegedly violative conduct.  App. 85.  Because the plain language is unambiguous, we need to look no further to affirm the District Court's grant of summary judgment in favor of the Union.

## B.  Extrinsic evidence of parties' intent

Heritage Valley acknowledges on appeal that this case "comes down" to contract interpretation but still argues the District Court erred by ignoring forceful evidence of the parties' intent to exclude the instant grievance from arbitration.  Brief for Appellant 11, 14.  Specifically, Heritage Valley contends that the parties engaged in a "course of conduct under the CBA" that is contrary to the District Court's interpretation of the Agreement.  Brief for Appellant, 14.  The "course of conduct" evidence seemingly consists of an incident in 2015 where the Union did not pursue arbitration in a similar staffing dispute.  Heritage Valley further argues that, because the Union did not attempt to re-negotiate the terms of Article 10.5 in the subsequent collective bargaining agreement, the parties did not intend for such staffing disputes to be subject to arbitration.  Because we agree with the District Court that the CBA's plain language unambiguously mandates arbitration, we need not consider whether this extrinsic evidence overcomes the presumption of arbitrability.  *See Local 827*, 458 F.3d at 312 ("Given the clarity of the

7

language in this CBA, we find that the bargaining history cited by [the plaintiff] is inapposite.").[3]

## III.    Conclusion

For the foregoing reasons, we agree with the District Court's ruling that the grievance is arbitrable under the CBA and affirm the grant of the Union's motion for summary judgment.

---

[3] Heritage Valley argues the Union's other claims of CBA violations all involve the "floating and pulling" of nurses and are therefore also excluded from arbitration pursuant to Article 10.5(a). Because we conclude that the Union's grievance arising from Article 10.5(a) is not excluded from the CBA's arbitration clause, we do not need to address this argument on appeal.